Bowler Lumber Company, Appellant, vs. Raasch, Respondent.

*March 13—May 1, 1945.*

The cause was submitted for the appellant on the brief of *Winter & Koehler* of Shawano, and for the respondent on the brief of *Lehner & Lehner, Adolph P. Lehner,* and *Howard N. Lehner,* all of Oconto Falls.

FRITZ, J. The following facts are stated in the circuit court's findings, or otherwise appear in the record, without dispute. On December 2, 1941, a balance of $61.91 remained unpaid and owing to the plaintiff, Bowler Lumber Company, for building materials purchased and used by Frank Knope in August to December, 1941, to build a silo on a farm leased to him at a monthly rental of $15 by Morris Brener, as special administrator of the estate of Martin Raasch, deceased, who was the father of Walter Raasch, the defendant in this action. The farm was part of the assets of the Raasch estate, in relation to which there were pending two actions brought against Walter Raasch and others by the special administrator, represented by his attorneys, Messrs. Winter & Koehler. In arranging with plaintiff for the payment of the materials, Knope promised to pay the $15 monthly rental directly to plaintiff, and it, upon asking the administrator's attorney, Mr. Winter, was informed that such payments would be so made; and in accordance therewith $15 were paid in each month from August to December, 1941.

On December 2, 1941, negotiations, in the presence of Walter Raasch, between his attorney, Adolph Lehner, and the administrator's attorneys, in their offices, resulted in the settlement of all matters in litigation and controversy between the parties, and the typing and the signing by their attorneys of the following stipulation:

"The parties hereto, represented by their respective attorneys, hereby stipulate that the defendant, Walter Raasch, will pay for the assets of the Raasch estate and in full settle-

ment of all of the matters and differences between the parties hereto, the sum of forty-seven hundred and fifty ($4,750) dollars, payment to be made during December, 1941. If payment is made, as herein provided, then the judgment against the said Walter Raasch, including the judgment against Emma Raasch, and all obligations shall be deemed to be paid in full and released. The assets, consisting of the farm personal property and whatever assets remain uncollected shall be delivered to the said Walter Raasch upon payment so made."

Walter Raasch did not sign the stipulation, but pursuant thereto the administrator was paid the sum of $4,750 by Raasch and there were transferred to him the Raasch estate assets, including the farm occupied by Knope.

In its complaint in this action to recover the balance still owing for the building material, plaintiff alleged that under the settlement agreement Walter Raasch agreed that as a further consideration to be paid by him thereunder, he "would pay and assume the obligation" of $59.19, "then existing in favor of the plaintiff, . . . and which was a charge against the land hereinbefore described, . . . and pursuant to such agreement the administrator conveyed the said lands to Walter Raasch." To sustain those allegations plaintiff relies upon parol evidence,—which was admitted and retained on the trial in justice court notwithstanding defendant's objections and motion to have it stricken,—of its attorney Mr. Koehler, to the following effect:

That while the stipulation was being typed in the office of Winter & Koehler, Winter, in the presence of Walter Raasch, brought to the attention of the attorneys, the fact that the silo was on the farm, the existing arrangement for payment thereof; and that it would have to be taken into consideration in the settlement; that Koehler asked if it would be satisfactory to have the rent paid in the same manner at the rate of $15 per month as long as Knope was on the farm. Lehner replied it was satisfactory and if Knope should move off the

farm it was improved by the silo being put upon it and Raasch should pay that and pay the $4,750. That Koehler said "we should put that in the paper too;" but Lehner said "it would not be necessary as we all knew what their deal was, so we did not revise the stipulation."

On cross-examination Koehler testified,—

"The entire stipulation was not reduced to writing. That is a part of what we agreed to but everything that was agreed to is not in that stipulation." Lehner "told us that it was not necessary to call back the girl and put that item in there."

In relation to that parol evidence the circuit court said in its decision,—

"If the consideration in the stipulation had not been expressly stated as $4,750 then parol evidence would be admissible to show what the consideration really was. However, in view of the fact that the amount is so expressed in the stipulation, this court is of the opinion that parol evidence is inadmissible to change the express terms of the stipulation which was, in effect, a contract between the parties thereto. If it were the intention of the parties that the defendant herein should pay a larger amount than $4,750, as it apparently was, the parties should have corrected the same before affixing their signatures thereto. It would have been a simple matter to change the figures or to have written in a brief statement to the effect that in addition to the amount stated therein the said Walter Raasch was to pay the Bowler Lumber Company the sum of $61.91. In view of the fact that the stipulation or contract was signed after this conversation, the effect of said written instrument was to merge all of the discussions and oral agreements into the one written instrument. The consideration having been expressly stated in the stipulation, this court is of the opinion that parol evidence is not admissible to vary the terms thereof. The court takes this position upon the theory that the discussions with reference thereto were intended to have the effect to provide the manner in which the defendant, Walter Raasch, was to make the payments agreed upon. If, however, it were to be assumed

that the agreement on the part of Raasch to pay Knope's debt to the Bowler Lumber Company was a separate and distinct agreement, then it was an agreement to answer for the debt of another and was not enforceable because not in writing."

And in its findings and conclusion the court said,—

"All conversations and oral agreement were merged in the stipulation in writing which was thereafter signed by the parties, and that such being contractual in nature, cannot be varied by parol evidence," and "If the alleged agreement was separate and apart of [from] the stipulation of settlement in the two actions, then it was an agreement to answer for the debt of another and was required to be in writing."

The court's decision, findings, and conclusions, and the judgment based thereon, must be sustained. The matters stated in the written stipulation have all the essential characteristics of a mutual contract and the force, effect, and consequences thereof are governed by the rules of law applicable to contracts generally. If there had arisen any question as to the meaning of, or as to what constituted, or was intended to be included under the terms in the stipulation which read, "the assets of the Raasch estate" and "the assets, consisting of the farm, personal property and whatever assets are uncollected," which were to be transferred and delivered to Raasch, and if the contract were considered to be incomplete on its face in that respect, because of the absence of a more specific designation, description, or schedule of such assets, then parol evidence might have been admissible to explain and supply in that respect the portion of the agreement which is not sufficiently covered by the writing. As we have said,—

"Where it appears from the writings themselves that the whole agreement is not stated therein, and that the writings are incomplete to express the entire agreement, parol evidence

may be received to supply that portion of the agreement not covered by the writings." *Dunn & Stringer Investment Co. v. Schaefer,* 209 Wis. 299, 303, 245 N. W. 85; *Bahr v. Evangelical Lutheran St. John's Society,* 236 Wis. 490, 295 N. W. 700.

However, that rule cannot be considered applicable in respect to the definite written provisions specifying the amount of the consideration which is to be paid by Raasch and the effect and consequences of his payment thereof. In those respects the contract is clearly complete on its face by reason of the following unambiguous provisions in the stipulation, to wit:

"Walter Raasch, will pay for the assets of the Raasch estate and in full settlement of all of the matters in difference between the parties hereto, the sum of forty-seven hundred and fifty ($4,750) dollars, payment to be made during December, 1941. If payment is made, as herein provided, then the judgment against the said Walter Raasch, including the judgment against Emma Raasch, and all obligations shall be deemed to be paid in full and released."

Manifestly, those provisions so definitely specify and completely cover the entire subject of Raasch's obligations in respect to the consideration which is to be paid by him "for the assets of the Raasch estate" that there is no occasion whatever nor is it permissible, to supplement or otherwise vary those provisions by parol evidence as to any verbal agreement. Neither is there any occasion nor is it permissible to vary by any such evidence the all-inclusive consequence and effect prescribed by the unambiguous provision:

"If payment is made, as herein provided, then . . . *all obligations* shall be deemed to be paid in full and released."

It is also contended by plaintiff that the court erred in concluding that if the agreement, which plaintiff claims defendant made to pay the balance owing to plaintiff, was sepa-

rate and apart from the contract covered by the written stipulation, then it was an agreement to answer for the debt of another and as such was required, in view of sec. 241.02 (2), Stats., to be in writing. In connection with that contention plaintiff claims that the parties to the written stipulation did not intend that it should cover all of the matters and things which had been agreed on, but a portion thereof should rest in parol; that defendant was indebted to the Raasch estate and the special administrator and in adjusting this debt different matters had to be taken care of; and that defendant's agreement was not to answer for the debt or default of Knope, but was an agreement by defendant to pay his own debt in a particular way. And in view of the matters thus claimed plaintiff contends that parol evidence was admissible to prove such additional agreement, where it was intentionally omitted by the parties from the writing.

Those contentions cannot be sustained. Under the evidence neither Knope's indebtedness for the material which he purchased from plaintiff, nor any obligation therefor (if any) on the part of the Raasch estate or the special administrator, can be deemed to have been assumed or become an obligation for the payment of which defendant became obligated to the Raasch estate, its administrator, or the plaintiff. Consequently, as it had never become a debt of the defendant, any oral promise by him for the payment thereof was void and unenforceable under sec. 241.02 (2), Stats. The decision in *Estate of Williams,* 230 Wis. 344, 283 N. W. 805, is not in point. In that case a mortgagee was held liable to a well digger who, when he was preparing to abandon a contract upon finding that the landowner was irresponsible, was induced by the mortgagee to complete the well upon his promise to the digger that he would pay him for his services and material. Thereafter, upon the completion of the well pursuant to that promise, the mortgagee was held liable because by reason thereof there was a debt of his own; and con-

sequently to this debt of his own there was inapplicable the statute of frauds in regard to nonliability on an oral promise to answer for the debt of another. In the case at bar all of the indebtedness in question had been incurred and existed in favor of the plaintiff as a "debt of another" prior to any promise by defendant in respect to the payment thereof.

Neither is there, under the evidence, any basis whatever for plaintiff's allegation in its complaint that the indebtedness owing to plaintiff was a "charge against the land." Plaintiff had never caused the indebtedness to be made a lien or incumbrance on the land which was conveyed to defendant as part of the assets of the Raasch estate. But,—even if it had been a "charge," as alleged,—under and by virtue of the unambiguous written provision in the written stipulation the entire amount of the obligation which defendant was required to pay was expressly limited to the specified sum of $4,750, as to which it was expressly provided that it was "in full settlement of all of the matters and differences between the parties hereto;" and that if the $4,750 are paid "as herein provided," then the judgment against Raasch and wife and "all obligations shall be deemed to be paid in full and released." These definite and explicit provisions as to the amount to be paid by Raasch and the consequences of such payment, clearly and completely express the intent of the parties that the $4,750 shall constitute the extent of his obligation, and that by the payment of that amount, all of his obligations shall be paid in full and released.

*By the Court.*—Judgment affirmed.